FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

97 JUN 25 AM 10: 24

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| **LARRY E. MARTIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | CV-96-PT-2007-M |
| | ) | |
| **KMART CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ENTERED**

**JUN 2 5 1997**

## MEMORANDUM OPINION

This cause comes on to be heard on the defendant Kmart Corporation's Motion for Summary Judgment filed on April 17, 1997. The plaintiff alleges that his former employer, Kmart, unlawfully fired him in violation of 29 U.S.C. § 621 *et seq.*, 42 U.S.C. § 1981, and 42 U.S.C. § 1983.

### BACKGROUND

Larry Martin began working for Kmart security in 1988 at the age of forty-two. Martin first worked at the Gadsden, Alabama Kmart store and soon transferred to a security manager job at the Centre, Alabama store.[1] He monitored shoplifting and accidents inside the store and executed the related paperwork. One of Martin's paperwork duties required him to report "discontinued detentions" to his store Loss Control Manager. Kmart also required him to submit a written report to his District Manager within twenty-four hours of a "discontinued detention." According to Martin's District Manager, Dennis Stachecki, a "discontinued detention" is an incident where a Kmart customer is questioned regarding suspected shoplifting. Kmart requires

---

[1] Although his job title changed occasionally (security, loss control, etc.), the title change apparently was more procedural than substantive.

1

written reports of such incidents for liability purposes.[2]

On October 21, 1994, Martin was involved in two incidents while training Gary Smith, a new Loss Control Trainee. In the first incident, Smith stopped a suspected shoplifter to ask if the suspect had a receipt for the jacket he was wearing. Martin asked the suspect to accompany him to the service desk when the suspect could not produce a receipt. A service desk employee then confirmed that the customer had bought the jacket. Martin thanked the suspect for his cooperation and allowed him to leave the store. The second incident concerned an encounter Martin had with several known shoplifters. Martin believed that he saw the suspects placing merchandise into their purses. As the women neared the store exit, he stopped them. He could see inside one suspect's purse and realized that it contained no merchandise. Martin then thanked the women and allowed them to leave.

Martin did not report these incidents to Dennis Stachecki, his District Manager. Stachecki learned of the incidents on October 24, 1994 after a suspect's parent complained. Stachecki investigated the matter and decided that the incident was a "discontinued detention" as Kmart defines that term. That same day, Stachecki phoned Martin to discuss both incidents. Martin explained that he did not report the incidents because he did not think they were discontinued detentions. Martin thought that a discontinued detention resulted when a loss control employee stopped a customer and took the customer to a detention room for questioning about suspected shoplifting. Martin characterized the disputed incidents as insignificant and common customer conversations.[3]

On October 26, 1994, Stachecki visited the store and discussed the two incidents with Smith, Martin's trainee. Their discussion convinced Stachecki that the incidents were discontinued detentions. He accordingly concluded that Kmart policy required Martin immediately to have reported the events to him. Martin's failure to report the events, Kmart

---

[2] According to Kmart, its Loss Control Associate Training and Certification Guide defines a discontinued detention. Kmart purportedly distributes this manual to new loss control employees at a loss control course. This course purportedly teaches new employees their responsibilities surrounding discontinued detentions. Martin completed this course in becoming certified as a Loss Control Associate.

[3] Meanwhile, on October 21, 1994, Stachecki had called Martin to follow up on Smith's training. Purportedly, Stachecki also asked Martin's age and birth date. Martin claims that he realized after Stachecki's phone call that Kmart planned to fire him because of his age.

2

therefore contends, violated company policy and was grounds for dismissal. Stachecki consulted with his direct supervisor, a Regional Loss Control Manager, before taking disciplinary action against Martin. The Regional Loss Control Manager purportedly agreed that Martin had violated Kmart policy by failing to report the incidents. Stachecki then met with Martin and fired him. Kmart replaced Martin with Kyle Sanders who was approximately forty-seven years old.

Martin then filed a charge of discrimination with the EEOC on April 18, 1995 alleging that Kmart fired him because of his age. He alleges that Kmart used the two disputed incidents as a pretext to cover their age discrimination. He further alleges that he was present at over a dozen Kmart meetings where higher management complained about the financial costs of employing older people. Martin specifically claims that District Manager Terry Edwards discussed firing "old people."[4] On March 15, 1996, after investigating the charge, the EEOC issued Martin a Notice of Right-to-Sue letter.

## **LEGAL STANDARD**

On a motion for summary judgment, the court must assess the proof to see whether a genuine need for trial exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is appropriate only if this court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party seeking summary judgment bears the initial responsibility of informing this court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. Id. at 323. Once the moving party has met this burden, the nonmoving party "must produce evidence that shows there exists a genuine issue of material fact." Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Rule 56(e) requires the

---

[4] Martin contends that Edwards proposed paying older employees one year's salary to take early retirement and securing an agreement that the employee would not later sue. Edwards also purportedly proposed harassing older employees until they quit.

nonmoving party to go beyond the pleadings and by affidavits, or by the depositions, answers to interrogatories, and admissions on file designate specific facts showing that a genuine issue for trial exists. Celotex, 477 U.S. at 324. The court may consider the offered pleadings, depositions, answers to interrogatories, and admissions on file, with the affidavits, if any, in deciding whether to grant or deny a summary judgment motion. FED. R. CIV. P. 56(c). In making the determination of whether a given factual dispute requires submission to a jury, the court must view the presented evidence through the prism of the substantive evidentiary burden. Anderson, 477 U.S. at 254-55. The court, however, must avoid weighing conflicting evidence or making credibility determinations. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992).

Considering the above, this court must examine the evidence to decide if a genuine issue of material fact exists.

### CONTENTIONS AND ANALYSIS

**1. Age Discrimination in Employment Act - 29 U.S.C. § 621 *et seq*.**

Kmart contends that Martin's action is barred because he failed to sue within ninety days of receiving his right-to-sue letter from the EEOC. Kmart argues that the EEOC sent Martin's letter by certified mail to him at his home address. Kmart claims that the post office delivered the letter on March 19, 1996 and had Pat Martin, the plaintiff's wife, signed the certified mail receipt. Kmart notes that Martin sued on August 2, 1996, 136 days after receiving the certified letter.

Martin, however, contends that he sued within the requisite ninety day period. Martin argues that his wife did not sign the certified mail return receipt from the EEOC. He claims instead that he received the EEOC's Notice on May 7, 1996 by standard delivery. In support, Martin submits his affidavit and his wife's deposition testimony  Martin contends, therefore, that he sued within the requisite ninety day period.

The court concludes that, as a matter of law, the action is time barred. Twenty-nine

4

U.S.C. § 626(e) requires an ADEA claimant to sue within ninety days of receiving notice of the right-to-sue from the EEOC. Under Eleventh Circuit law, the ninety-day statute of limitations commences upon receipt of the right-to-sue letter. Stallworth v. Wells Fargo Armored Services Corp., 936 F.2d 522, 524 (11th Cir. 1991). The court has adopted a case-by-case approach to deciding what constitutes receipt thus triggering the limitation period. Stallworth, 936 F.2d at 524. This court concludes, as a matter of law, that Martin filed his lawsuit on August 2, 1996, more than ninety days after receiving notice from the EEOC on March 19, 1996.

The seminal Eleventh Circuit case concerning such limitations periods is Bell v. Eagle Motor Lines, Inc., 693 F.2d 1086 (11th Cir. 1982). In Bell, the EEOC delivered the plaintiff's right-to-sue letter to his residence where his wife signed for it. The plaintiff did not learn of the letter until eight days later. The court calculated the ninety-day period from the date the plaintiff's wife received the notice at his residence. Consequently, the plaintiff's lawsuit was time barred. The lawsuit would have been timely, however, had the court calculated the time from the date the plaintiff received the notice. The court explained:

> This court has refused to establish an inflexible rule determining when a complainant has 'received' notice of his right to sue. . . . We need not embrace the doctrine of constructive receipt, nor close our eyes to the liberal construction the act is entitled to in order to fashion a fair and reasonable rule for the circumstances of this case. *There is no reason why a plaintiff should enjoy a manipulable open-ended time extension which could render the statutory limitation meaningless.* Plaintiff should be required to assume some minimum responsibility himself for an orderly and expeditious resolution of his dispute.

Bell, 693 F.2d at 1087 (emphasis added).

If not for one curious angle, the present case would be indistinguishable from Bell. In Bell, the evidence was undisputed that the plaintiff's wife signed for and received the EEOC's notice. Presently, however, Martin's wife contends that the signature on the certified mail return receipt is not hers. The evidence establishes, nevertheless, that on March 15, 1996, the EEOC issued Martin's right-to-sue letter and mailed it via certified mail. The EEOC's file contains a receipt from the United States Postal Service that shows the EEOC mailed the letter

5

via certified mail. A United States postal carrier who delivered the right-to-sue letter testified that she properly delivered the certified letter to Martin's residence on March 19, 1996. The postal carrier further testified that Martin's wife signed for and received the letter on March 19, 1996.

Despite such compelling evidence that Martin's wife signed for and received delivery of the EEOC's notice, Martin claims that his wife did not actually receive nor sign for the letter. Martin contends, therefore, that a genuine issue of fact exists as to the date Martin learned of his rights. An issue of fact is "material' if it is a legal element of the claim, as identified by the substantive law governing the case, such that its presence or absence might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed.2d 202 (1986). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed.2d 538 (1986). Although a material issue of fact exists here, the court concludes that a genuine issue of fact does not exist where the defendant merely denies that the record evidence is somehow incorrect. Pat Martin's testimony and Larry Martin's affidavit, standing alone and unsupported by other evidence, are insufficient to defeat Kmart's properly supported summary judgment motion. The common law has long recognized a rebuttable presumption that an addressee received an item properly mailed. Konst v. Florida East Coast Railway Co., 71 F.3d 850, 851 (11th Cir. 1996). "The 'presumption of receipt' arises upon proof that the item was properly addressed, had sufficient postage, and was deposited in the mail." Konst, 71 F.3d at 851. The Martins' conclusory and self-serving assertions to the contrary do not create even a scintilla of reliable evidence to explain how Pat Martin's signature appeared on the certified mail receipt. Once Kmart supported its summary judgment motion with evidence establishing the presumed delivery of the EEOC letter, the burden shifted to Martin to submit evidence rebutting that presumption. Such evidence may have included a copy of the EEOC envelope showing the postmark date or the dated EEOC letter. Martin submitted neither this nor any other similar evidence. He instead relies on bare denials and self-serving statements to create a *genuine* issue of material fact. The court concludes, therefore, that no rationale trier of fact

6

could justifiably infer that the certified mail receipt contains a signature other than that of Pat Martin.[5] As such, the action is time barred.

In reaching its conclusion, the court is mindful of the Supreme Court's stern admonition that:

> Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of vague sympathy for particular litigants . . . . In the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.

Baldwin County Welcome Center v. Brown, 466 U.S. 147, 152, 104 S. Ct. 1723, 1726, 80 L. Ed.2d 196 (1984) (internal citations omitted). Although as noted, the court must approach the issue on a case-by-case basis, the court must also guardedly decide the issue so as not to establish a manipulable open-ended time extension that would render the statutory limitation meaningless. The ninety-day notice period is explicit evidence that Congress intended for plaintiffs to act promptly, without needless wait. Nevertheless, the court must conduct an examination of the facts to decide if reasonable grounds exist to equitably toll the filing period. "Equitable tolling is to be restricted and reserved only for situations in which the claimant has made a good faith error or has been prevented in some extraordinary way from filing his complaint in time." Jones v. Madison Service Corp., 744 F.2d 1309, 1314 (7th Cir. 1984). An evidentiary review persuades the court that no such grounds are present. At best, the record contains an unexplained denial of a signature's authenticity. Were the court to conclude otherwise, it would create an incentive and avenue for plaintiffs to avoid the legislature's directive. "To allow additional time based on a claim that the letter was not actually received . . . until [later] would be to foster a manipulable open-ended time extension which would render the statutory limitation meaningless." Law v. Hercules, Inc., 713 F.2d

---

[5] In a related situation, the Eleventh Circuit reversed a district court ruling that held that a plaintiff's affidavit stating that he had never received IRS notices rebutted any inference of receipt arising from the government's production of evidence that it had mailed the notices on a specific date. Rosser v. United States, 9 F.3d 1519, 1521 (11th Cir. 1993).

691, 693 (11th Cir. 1983).[6] The defendant's Motion for Summary Judgment on this claim will be granted.[7]

### 2. 42 U.S.C. § 1981

The defendant correctly contends that Martin cannot maintain a claim under 42 U.S.C. § 1981. That statute provides in relevant part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment pains, penalties, taxes, liens, and exactions of every kind, and to no other.

Under the present facts, no evidence exists that Kmart's purported discrimination was based on Martin's race. Martin's lawsuit is one for age discrimination and is unrelated to the considerations specifically addressed by § 1981's language. The defendant's motion will be granted as to this claim.

### 3. 42 U.S.C. § 1983

The defendant also correctly contends that Martin cannot maintain a claim under 42 U.S.C. § 1983. That statute provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

---

[6] A contrary conclusion would almost certainly require the EEOC to establish in every case actual receipt of the right-to-sue letter for the limitations period to commence. The court knows of no better way then presenting a signed certified mail receipt as here. This method is practical but any additional burden would become impractical.

[7] Although the court need not reach the merits, the court concludes that the decision was made for a business reason, not based on age. Even if there was a misunderstanding or unfairness, that is not enough to create a reasonable inference of age discrimination. The court has considered the respective arguments of the parties in this regard. The court also notes the age of Martin's replacement.

In any § 1983 action, the plaintiff must prove that the official acted under color of state law and caused an injury to his constitutional or federal rights. A person acts under color of state law when he acts with authority possessed by virtue of his employment with the state. Edwards v. Wallace Community College, 49 F.3d 1517, 1522 (11th Cir. 1995). "The dispositive issue is whether the official was acting pursuant to the power he/she possessed by state authority or acting only as a private individual." Id. (citing Monroe v. Pape, 365 U.S. 167, 183-84, 81 S. Ct. 473, 482, 5 L. Ed.2d 492 (1961), *overruled on other grounds* by Monell v. Department of Social Services, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed.2d 611 (1978).

The present facts show that Martin was discriminated against, if at all, by a private person, not a state actor under color of state law. The requisite state action therefore is missing. The defendant's motion will be granted as to this claim.

This 25th day of June, 1997.

Robert B. Propst
Senior United States District Judge

9